IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICKY MAYON, | Civil Action No. 2: 14-cv-1203 |
| Plaintiff, | |
| v. | United States Magistrate Judge<br>Cynthia Reed Eddy |
| MARK CAPOZZA, ROCHELLE KING, COLIN FISCHETTI, NATHAN GUSKIEWICZ, SCOTT BOMBERGER, JOSEPH SCHOTT, CANDICE LACKEY, DONALD BENGELE, and UNKNOWN MEMBERS OF THE PENNSYLVANIA BOARD OF PROBATION AND PAROLE, | |
| Defendants. | |

**MEMORANDUM OPINION**

Presently pending is the Motion for Judgment on the Pleadings filed by Defendant Rochelle King. (ECF No. 60). For the reasons that follow, the Motion will be granted.[1]

**Factual Background**

On September 5, 2014, the Court received a Complaint and Exhibits submitted for filing by Micky Mayon, ("Plaintiff" or "Mayon"); however, the Complaint was not accompanied by a Motion to Proceed *in forma pauperis* or the payment of the filing fee. On September 11, 2014, Plaintiff filed a motion to proceed *in forma pauperis* (ECF No. 2), which was granted (ECF No. 4), and the Complaint was filed. (ECF No. 5). Defendants filed Motions to Dismiss (ECF Nos. 34, 38, and 40), which the Court granted in part and denied in part (ECF No. 55). The only

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge; therefore the Court has the authority to decide dispositive motions and to enter final judgment. (ECF Nos. 37, 44, 46, and 47).

1

claims remaining are Plaintiff's Section 1983 retaliation claims against the remaining defendants Rochelle King ("King" or "Defendant"), a parole interviewer; Donald Bengele, Scott Bomberger, Mark Capozza, Nathan Guskiewicz, Candice Lackey, and Joseph Schott, (collectively referred to as the "Corrections Defendants") and Colin Fischetti, a Therapeutic Counselor at SCI-Pittsburgh. All defendants, except Mark Capozza, are named only in their individual capacities. Mark Capozza, the Superintendent of SCI-Pittsburgh, is named in both his individual and official capacities. According to the Complaint, all of the named defendants work at SCI-Pittsburgh. Mayon requests declaratory judgment, as well as compensatory and punitive damages.

Mayon is a Pennsylvania state prisoner incarcerated at the State Correctional Institution ("SCI") at Fayette. The allegations which give rise to this Complaint occurred while Mayon was incarcerated at SCI-Pittsburgh, prior to his transfer to SCI-Fayette. According to the Complaint, in order to qualify for parole, Mayon entered a rehabilitative program called Therapeutic Community ("TC"). Shortly after enrolling, Mayon "felt the way he was being treated was unfair," and he filed numerous administrative grievances and appeals. Mayon alleges that after filing his grievances, Defendants began to retaliate against him.

The Complaint identifies King as a "parole interviewer at SCI Pittsburgh. She interviews candidates for parole and then submits a report to the Pennsylvania Board of Probation and Parole." (ECF No. 5, par. 5, p. 2). The allegations against King are sparse. Plaintiff asserts:

> January 15, 2014 plaintiff was interviewed by defendant King for parole. Plaintiff explained he was being retaliated against by SCI Pittsburgh staff for filing administrative grievances. Defendant King mocked plaintiff and called him a liar.

(*Id*. par. 50, p. 9).

On February 7, 2014, Plaintiff was notified that he was denied parole for numerous reasons including unacceptable compliance with prescribed institutional program, level of risk to the community, negative recommendation by the Department of Corrections, failure to demonstrate motivation for success, minimization of the offense, and lack of remorse. (*Id*. par. 51, p. 9; ECF No. 5-37). Plaintiff describes the parole denial as "a one year hit[,]" presumably meaning that he was not eligible for parole for a year following his denial. (ECF No. 5, par. 50, p. 9).

On September 2, 2015, Defendant King filed an Answer to the Complaint and asserted numerous affirmative defenses, including absolute immunity. Other than denying that she mocked Plaintiff and called Plaintiff a liar, Defendant admits the allegations in the Complaint quoted above. (ECF No. 56).

On September 9, 2015, Defendant King filed a Motion for Judgment on the Pleadings and a brief in support thereof. (ECF Nos. 60 and 61). Plaintiff has responded. (ECF Nos. 69 and 78). The parties have fully briefed the issues and this matter is ripe for adjudication.

**Standard of Review**

A.  *Pro Se Litigants*

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552,

555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a Section 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a legally cognizable claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002).

B.  *Motion for Judgment on the Pleadings Pursuant to Rule 12(c)*

"A motion for judgment on the pleadings is not granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Jablonski v. Pan Am. World Airways,* 863 F.2d 289, 290 (3d Cir. 1988) (quoting *Society Hill Civil Assoc. v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). A Rule 12(c) motion is judged under the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991). The only difference is that on a motion for judgment on the pleadings, the Court

reviews not only the complaint, but also the answer and written instructions attached to the pleadings. 2-12 James Wm. Moore, *et al.*, Moore's Federal Practice § 12.38 (Matthew Bender ed. 2015). As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In considering a Rule 12(b) (6) motion, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step

approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp.,* 998 F.2d at 1196. Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").[2]

---

[2] Plaintiff argues that Defendant should have raised the defense of absolute immunity in her Motion to Dismiss pursuant to Rule 12(b)(6) and that she should not now be allowed to file a Motion for Judgment on Pleadings pursuant to Rule 12(c). While Rule 12(g)(2) restricts successive motions pursuant to Rule 12 (b) (2) – (5), Rule 12(g)(2)(B) allows a Motion for Judgment on the Pleadings to be filed pursuant to Rule 12(c) to state a legal defense to a claim after an Answer has been filed, even if a prior Motion to Dismiss was filed pursuant to Rule 12(b)(6). *See Dicio v. Wells Fargo Bank, N.A.*, No. 15-CV-676, 2015 WL 8276585, at *17 (W.D.

**Discussion**

Defendant King filed an Answer following the Court's denial of her Motion to Dismiss the Complaint. (ECF No. 56). She then filed a Motion for Judgment on the Pleadings, asserting that as a parole hearing officer she is entitled to absolute immunity from Plaintiff's remaining claim of retaliation. (ECF Nos. 61 and 62). Plaintiff responds that parole board members are not absolutely immune when they are acting in an executive capacity rather than in a quasi-judicial capacity. (ECF Nos. 69 and 78). He argues that King acted in an executive capacity when she interviewed him and submitted a report to the Parole Board. Plaintiff argues that Defendant King joined the retaliation against him which resulted in his denial of parole. *Id*. He also asserts that King should have investigated his retaliation claim against the other defendants. (ECF No. 69 at p. 3). Therefore, the Court must determine whether Defendant King was acting in a quasi-judicial capacity when she interviewed Plaintiff and submitted her report to the Parole Board.

Public officials are entitled to absolute immunity from Section 1983 liability for the performance of judicial acts. *See Stump v. Sparkman*, 435 U.S. 349, 355-56, 98 S.Ct. 109, 55 L.Ed. 2d 331 (1978). The Court of Appeals for the Third Circuit has held that parole officers are "quasi-judicial officers" and entitled to absolutely immunity when they are engaged in adjudicatory duties. *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (hearing evidence against prisoner and making a recommendation to the parole board is "plainly an adjudicatory function[.]"). However, parole officers are not are not entitled to absolute immunity for acts taken in their executive, administrative, or ministerial capacities. *Wilson*, 878 F.2d at 775-76. The Court of Appeals for

---

Pa. Nov. 4, 2015) report and recommendation adopted, No. 15-CV-676, 2015 WL 8207486 (W.D. Pa. Dec. 7, 2015).

the Third Circuit "suggested that one could identify adjudicatory acts as those that were an 'integral part of the judicial process.'" *Simon v. Ward*, No. CIV. A. 99-1554, 2001 WL 41127, at *3 (E.D. Pa. Jan. 16, 2001) (quoting *Thompson v. Burke*, 556 F.2d 231, 237 (3d Cir. 1977)). The court of appeals has consistently held that "in the parole board context that hearing evidence; making recommendations as to whether to parole a prisoner; and making decisions to grant, revoke or deny parole are adjudicatory acts for which the actor is entitled to absolute immunity." *Id*. (citing *Wilson*, 878 F.2d at 776; *Harper*, 808 F.2d at 284); *See also Keller v. PA Bd. of Prob. & Parole*, 240 F. App'x 477, 480 (3d Cir. 2007) (parole board member who interviewed prisoner and participated in the decision to grant re-parole entitled to absolute immunity for adjudicatory actions).

The Court of Appeals for the Third Circuit has held that non-adjudicatory duties include: (1) investigating allegations of parole violations and crimes, (2) typing and signing warrants for arrest of parole violators, (3) assisting police in investigations of crimes committed by parolees, (4) providing false information that a parole violated terms of parole or committed a crime, (5) performing the general responsibilities of a parole or probation office, (6) presenting information to the parole board about a parole violation, and (7) conducting a warrantless search of a parolee's residence without probable cause. *Simon*, 2001 WL 41127, at *3 (collecting cases).

Plaintiff argues that "in Pennsylvania, non-violent parole candidates such as Plaintiff, meet with only with a hearing examiner, who then submits a report to the Parole Board. In preparing that report, Defendant King is acting in an executive capacity." (ECF No. 69, p. 3). The Court disagrees. The type of conduct described by Plaintiff falls squarely within the adjudicatory duties outlined in *Wilson* and *Harper* as "quasi-judicial" functions of parole hearing officers. Defendant King's role in Plaintiff's parole process was limited to interviewing Plaintiff

8

and issuing a report of that interview to the Parole Board. Her adjudicatory role is further evidenced by the Parole Board's finding that Plaintiff failed to demonstrate a motivation for success, minimized his offense and his lack of remorse during his interview as reasons for denying parole. The purpose of her interview and report was to determine whether parole was warranted, not to investigate a parole violation or present the Parole Board with information as to a parole violation. As such, Defendant King acted only within her adjudicatory capacity as a parole hearing officer and is entitled to absolute immunity for her actions in Plaintiff's parole denial.[3]

## Conclusion

For the reasons stated above, the Motion for Judgment on the Pleadings (ECF No. 60) filed by Rochelle King will be granted. To summarize, the only claims that remain in this case are Plaintiff's § 1983 retaliation claims against Defendants Capozza, Guskiewicz, Bomberger, Schott, Lackey, Bengele, and Fischetti, and the unserved "unknown members of the Pennsylvania Board of Probation and Parole." A separate Order follows.

Dated: February 23, 2016

By the Court,

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

---

[3] To the extent that Plaintiff seeks relief from or reversal of the denial of his parole, such relief is not available through a Section 1983 action, and is rather appropriately established through a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This decision should not be interpreted as an adjudication of any possible relief Plaintiff may have pursuant to 28 U.S.C. § 2254.

cc:     MICKY MAYON
        JT - 8095
        SCI Fayette
        P.O. Box 9999
        LaBelle, PA 15450-0999
        (via U.S. First Class Mail)

        Sandra A. Kozlowski
        Pennsylvania Office of Attorney General
        (via ECF electronic notification)

        Jeffrey M. Paladina
        Pennsylvania Department of Corrections, Office of Chief Counsel
        (via ECF electronic notification)

        Dennis St. J. Mulvihill
        Robb Leonard Mulvihill LLP
        (via ECF electronic notification)

        Erin J. Dolfi
        Robb Leonard Mulvihill LLP
        (via ECF electronic notification)