IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| MICKY MAYON, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-CV-01203-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| MARK CAPOZZA, SUPERINTENDENT, | ) | |
| IN HIS INDIVIDUAL AND OFFICIAL | ) | |
| CAPACITIES; COLIN FISCHETTI, | ) | |
| THERAPEUTIC COMMUNITY | ) | |
| COUNSELOR, IN HIS INDIVIDUAL | ) | |
| CAPACITY; NATHAN GUSKIEWICZ, | ) | |
| CORRECTIONAL OFFICER, IN HIS | ) | |
| INDIVIDUAL CAPACITY; SCOTT | ) | |
| BOMBERGER, PENNSYLVANIA | ) | |
| DEPARTMENT OF CORRECTIONS | ) | |
| COUNSELOR, IN HIS INDIVIDUAL | ) | |
| CAPACITY; JOSEPH SCHOTT, UNIT | ) | |
| MANAGER, IN HIS INDIVIDUAL | ) | |
| CAPACITY; CANDICE LACKEY, UNIT | ) | |
| MANAGER, IN HER INDIVIDUAL | ) | |
| CAPACITY; DONALD BENGELE, | ) | |
| CORRECTIONAL OFFICER, IN HIS | ) | |
| INDIVIDUAL CAPACITY; AND | ) | |
| UNKNOWN MEMBERS OF THE | ) | |
| PENNSYLVANIA BOARD OF | ) | |
| PROBATION AND PAROLE, IN THEIR | ) | |
| INDIVIDUAL CAPACITIES; | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.    INTRODUCTION

Presently before the Court is Defendant Colin Fischetti's Motion for Summary Judgment

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

[ECF No. 124] and Defendants Donald Bengele, Scott Bomberger, Mark Capozza, Nathan Guskiewicz, Candice Lackey, and Joseph Schott's Motion for Summary Judgment. [ECF No. 128]. The motions are fully briefed and ripe for disposition. For the reasons that follow, said motions are GRANTED.

## II.    BACKGROUND

Plaintiff Micky Mayon ("Plaintiff" or "Mayon") a prisoner presently confined at State Correctional Institution ("SCI") at Fayette and proceeding *pro se*, initiated this civil rights action on September 5, 2014. [ECF Nos. 1, 5]. Defendants filed Motions to Dismiss [ECF Nos. 34, 38 and 40], which the Court granted in part and denied in part. [ECF No. 55]. On February 23, 2016, the Court granted Defendant King's Motion for Judgment on the Pleadings. [ECF Nos. 60, 90]. The only remaining claims are Plaintiff's Section 1983 First Amendment retaliation claims against the remaining defendants Donald Bengele, Scott Bomberger, Mark Capozza, Nathan Guskiewicz, Candice Lackey, and Joseph Schott, various DOC officials at SCI-Pittsburgh (collectively referred to as the "Corrections Defendants") and Colin Fischetti ("Defendant Fischetti"), a Therapeutic Counselor at SCI-Pittsburgh. All defendants, except Mark Capozza, are named only in their individual capacities. Mark Capozza, the Superintendent of SCI-Pittsburgh, is named in both his individual and official capacities.

### a.    *Plaintiff's Allegations*

Mayon is presently a Pennsylvania state prisoner incarcerated at the State Correctional Institution ("SCI") at Fayette. The allegations which give rise to this Complaint occurred while Mayon was incarcerated at SCI-Pittsburgh, prior to his transfer to SCI-Fayette in March 2014. According to Plaintiff, in order to qualify for parole, Mayon entered a rehabilitative program called Therapeutic Community ("T.C."). Shortly after enrolling, Mayon "felt the way he was

being treated was unfair," and he filed numerous administrative grievances.

Mayon alleges that after filing his grievances, Defendants began to retaliate against him. Mayon asserts numerous instances where he allegedly was retaliated against for filing grievances about his perceived treatment in T.C.. The remaining retaliation claims are: (1) he was forbidden from wearing his tinted eyeglasses in T.C.;[2] (2) he was removed from T.C. and issued a misconduct, which resulted in a two week cell restriction;[3] (3) he was removed from T.C. a second time;[4] (4) he was issued a false misconduct;[5] (5) he was given a negative parole recommendation and he was transferred to SCI-Fayette;[6] (7) he was denied his property from commissary and was "kicked off the F-block;"[7] and (8) he was verbally threatened to stop filing grievances.[8]

### i. Tinted Glasses

Because the Court finds that Plaintiff has failed to exhaust his claims, only the facts concerning his initial grievance, Grievance 480885, will be recounted. The SCI-Pittsburgh Inmate Handbook Supplement states that "no hats or sunglasses are to be worn on the Unit." [ECF Nos. 5-34 and 169-1, pp. 11]. On September 27, 2013, Defendant Fischetti confronted Mayon about wearing tinted glasses inside the prison after being instructed to wear clear glasses and gave Mayon a "pullup" for the infraction. [ECF Nos. 5, ¶ 22, 15; 127-4]. On that same date,

---

[2]       This retaliation claim is asserted against Defendant Fischetti.

[3]       This retaliation claim is asserted against Defendant Bomberger.

[4]       This retaliation claim is asserted against Defendant Schott.

[5]       This retaliation claim is asserted against Defendant Bengele.

[6]       These retaliation claims are asserted against Defendant Capozza.

[7]       These retaliation claims are asserted against Defendant Lackey.

[8]       This retaliation claim is asserted against Defendant Guskiewicz.

Mayon filed Grievance 480885 alleging he was being retaliated against for filing grievances by not being permitted to wear his sunglasses and by being threatened by C.O.'s that if he kept filing grievances, there would be a "target on his back." [ECF No. 127-5]. On October 1, 2013, Mayon refused to attend T.C. activities and received an informal misconduct for refusing to obey an order. [ECF No. 127-6]. The "Informal Resolution" stated that Mayon was given a direct order to be present at all T.C. activities, but continued to "make excuses for his behavior and not follow orders." *Id.* On October 2, 2013, Mayon submitted an Inmate's Request to Staff Member stating:

> I had [LASIK] eye surgery done in 1997 which made my eyes extremely light-sensitive so sometimes I wear prescription sunglasses. It was never a problem until recently when T.C.2 staff instructed me to not wear my prescription sunglasses in the audit[orium]. Sometimes it's bright in that auditorium so sometimes I need my prescription sunglasses. I need you to confirm my eyes were burned with a laser and give me a medical pass verifying I need prescription sunglasses. . . .

[ECF No. 127-7]. Mayon was directed to "sign up for sick call to have your medical complaint evaluated." *Id.* On October 3, 2013, Mayon was discharged from T.C. as a result of the informal misconduct. [ECF No. 127-1]. The correctional Plan Evaluation noted that Mayon "had behavioral issues when asked to follow dress code and regulations for the program." [ECF No. 127-1].

Grievance 480885 regarding his tinted glasses and alleged verbal threats was rejected by Defendant Scire on October 11, 2013. [ECF No. 127-8]. On October 31, 2013, Mayon appealed the rejected grievance. [ECF No. 127-9]. In his appeal, Mayon provided the address of the physician he believed had performed the LASIK surgery and requested that he be "placed back in T.C. with my graduation date of mid-December intact." *Id.* He also requested that he be given permission to wear his prescription sunglasses. *Id.* Mayon later submitted two Inmate's Request

to Staff Member on December 5, 2013 and December 13, 2013 stating that he had not provided the correct physician name and provided the name of another medical practice. [ECF No. 154 at pp.37-38]. Mayon was again informed that he should sign up for sick call to discuss the issue and to sign a release for medical information. *Id*. Mayon's appeal of Grievance 480885 was denied and found to be without merit on November 14, 2013. [ECF No. 127-11]. Mayon was informed that he needed to provide a medical excuse for wearing tinted glasses, and although the grievance was found to be without merit, Mayon was informed that he would be given a second opportunity to complete T.C.. *Id*. A few days later, Mayon withdrew from the program and asserts he did so because he claims that his original misconduct was "bogus." [ECF Nos. 127-11-12, 152, p. 8].

In January 2014, Mayon sent an "addendum" to Defendant Capozza apologizing for previously providing the wrong physician information and attached a letter from Premier Eye Care Group. He also stated: "I will have my eyes examined in the future, but not by some SCI Pittsburgh [unreadable]. I fear I'll walk out of the office blind. Not to mention he'd probably lie anyway." [ECF No. 5-21]. The letter from Premier Eye Care Group verified that Mayon had LASIK in both eyes in 1998 by Dr. Armesto. It further stated that the group had not seen Mayon in over ten years and that it would be reasonable to for him to have an eye appointment. [ECF Nos. 126-16 and 17]. The letter made no mention of a physician's order that Mayon wear dark glasses, nor did Mayon present any such order to defendants or the court. On March 4, 2014, Mayon was transferred to SCI-Fayette.

ii. Exhaustion

Because the entirety of this decision rests on exhaustion grounds, the Court will further

explicate Plaintiff's exhaustion of his grievance. Plaintiff filed Grievance 480855[9] on September 27, 2013 alleging the following:

> Apparantly [sic] the T.C. Program is designed to teach convicts positive behaviors, including refraining from using the grievance system. I was warned on 2 separate occasions by 3 different staff members I would put a "target on my back" by using it. Since these warnings about 3 weeks ago, 1 of the 3 lied on me, then pulled me up, then wrote the consequence which was more severe than other inmates pulled up for the same thing. Also, I had L[ASIK] surgery done in 1997 which made my eyes light-sensitive. So I wear prescription sunglasses to avoid headaches. I informed the T.C. 2 Staff of this but they said they didn't care and then punished me for wearing the prescription sunglasses. I also informed T.C. 2 Staff I wanted to advance to Phase II so I could wear footwear other than state boots which hurt by feet. I completed all assignments for Phase I yet staff refuses to advance me to Phase II. It is retaliation against myself [sic] for writing grievances.

Grievance 480885 [ECF No. 5-6]. Grievance 480855 was rejected on October 11, 2013 because the issues presented were reviewed and addressed and the Facility Grievance Coordinator indicated that a previous grievance that Mayon claimed have problems with the T.C. staff was withdrawn.

Plaintiff then appealed this denial on October 31, 2013 to Superintendent/Facility Manager Mark Capozza indicating that Defendant Fischetti forbade him from wearing his tinted glasses in T.C. *See* 10/31/2013 Appeal to Initial Review [ECF No. 1-11].

In the Initial Review Response, the Facility Grievance Coordinator Defendant Scire

---

[9]     While it is clear from the submissions that Plaintiff filed additional grievances during his time in SCI-Pittsburgh, it is undisputed that the only grievance that Plaintiff appealed was Grievance 480885. The other grievances were either withdrawn or never appealed consistent with the prisoner grievance regime as set forth in Pennsylvania Department of Corrections Administrative Directive 804 ("DC-ADM 804"). There is no evidence that Grievance 486446 [ECF No. 127-28] was ever appealed and Grievance 478226 was withdrawn. *See* [ECF No. 127-2; 127-3]. Further, while Plaintiff submitted multiple Inmate Requests to Staff Member, an inmate staff request is not a submission in compliance with grievance procedures and will not be considered a grievance. To the extent that Plaintiff argues that he alleged retaliation was in the form of a misconduct, there is no evidence that Plaintiff exhausted any of his appeals for these misconducts consistent with the prisoner misconduct policy governed by the Pennsylvania Department of Corrections Administrative Directive 801 ("DC-ADM 801").

denied Grievance 480885 on November 14, 2013 and found:

> To investigate your grievance I interviewed T.C. staff, Security staff and reviewed T.C. procedures. You remained in your cell during afternoon meetings and was [sic] unwilling to attend them when instructed by both treatment and security staff. You were unable to provide a medical excuse for wearing tinted glasses indoors while attending grounds and did inform staff that you do own a pair of clear prescription glasses. You were also not able to provide a medical excuse for breaking dress code by wearing non-state issued boots.
>
> You were not moved into phase 2 of the T.C. because:
>
> - Your house tool (Push-up Pull-up) ratio was well under the requirement to phase up.
> - Your behavior in meetings and in groups was anti-social and anti-authority.
> - You refused on several occasions to complete assignments appropriately.
>
> On 11/14/2013 you were reassigned to the T.C.2, however, it is mandatory that you provide a medical excuse for you to be permitted to wear non-state issued boots and tinted glasses[;] there will be no exception to these rules. You should consider yourself to be fortunate; you have been given a second opportunity to complete your prescribed programs. This time be a mature and responsible adult. I find your grievance to be without merit and frivolous. At no time were you being punished by T.C. staff or retaliated against for writing grievances. This grievance is denied.

Initial Review Response of Grievance 480855 [ECF No. 5-12]. On November 21, 2013, Mayon voluntarily signed himself out of the T.C. Program. *See* Pa. D.O.C. Correctional Plan [ECF No. 127-12].

On February 24, 2014, Superintendent/Facility Manager Defendant Capozza denied Mayon's appeal stating:

> Be advised, I concur with Ms. Scire's, Facility Grievance Coordinator investigation and response and I regret the delay in my response, though I am confused about what you are appealing. You were removed from the T.C. program after an informal misconduct for refusing to attend programming repeatedly. You remained in your cell during afternoon meetings and were unwilling to attend them when instructed by both treatment and security staff. You were unable to provide a medical excuse for wearing tinted glasses indoors while attending groups and did inform staff that you do own a pair of clear

prescription glasses.  You were also not able to provide a medical excuse for breaking dress code by wearing non-state issued boots.

You were not moved into phase 2 of the T.C. because:

- Your house tool (Push-up Pull-up) ratio was well under the requirement to phase up.
- Your behavior in meetings and in groups was anti-social and anti-authority.
- You refused on several occasions to complete assignments appropriately.

On 11/15/2013 you were reassigned to the T.C.2, you were told it is mandatory that you provide a medical excuse from SCI-Pittsburgh's Infirmary only; [sic] for you to be permitted to wear non-state issued boots and tinted glasses[;] there will be no exception to these rules.  You lasted four days and on 11/20/2013 you voluntarily signed yourself out of the program.

At no time were you being punished or abused by T.C. or DOC staff and/or retaliated against for writing grievances.  **If you don't make parole, if will be you [sic] own fault.  Recommended Program Completion is not optional it is mandatory**.  If your eyes need to be examined, sign up for sick call.  Your request for compensation and this appeal is denied.

Facility Manager's Appeal Response re Grievance No. 480855 [ECF No. 5-24] (emphasis in original).  Plaintiff admits that he received the Facility Manager's Appeal Response to Grievance 480885 on February 25, 2013. *See* Amended Final Appeal [ECF No. 5-27] ("I did receive a response from Mr. Capozza on 2-25-2013[.]").

At a point prior to receiving the Facility Manager's Appeal Response, on or about February 2, 2014, Mayon prematurely appealed Grievance No. 480855 to the Secretary's Office of Inmate Grievances & Appeals ("SOIGA") and indicated that he had not yet received the Facility Manager's Appeal Response. *See* Mayon's Final Appeal 2/2/2014 [ECF No. 1-23] ("To date he has not responded to my appeal.").  On February 27, 2014, SOIGA notified Mayon that the Facility Manager's Appeal Response was not completed at the time they received his appeal, indicated that they contacted SCI Pittsburgh's facility grievance coordinator and determined that

a response was completed on February 25, 2014, indicated that Mayon could submit his written appeal after he received the facility manager's response and his written appeal could not exceed two pages. SOIGA Notice of 2/27/2014 [ECF No. 5-25] ("SOIGA Notice"). On March 4, 2014, Mayon was transferred from SCI-Pittsburgh to SCI-Fayette. After Mayon received the Facility Manager's Appeal Response and the SOIGA acknowledgment of his appeal, he submitted an "Amended Final Appeal" to SOIGA which read:

> I received your notice today, Wednesday March 19, 2013. I did receive a response from Mr. Capozza on 2-25-2013, but by that time, Mr. Capozza has demonstrated ill-will, and I had already mailed an appeal to you. But you want another one so here it is.
>
> All medical issues aside, [SCI] Pittsburgh's Inmate Handbook Supplement states on page 9: "No hats or sunglasses are to be work on the unit." So for staff to forbid me to wear prescription sunglasses in the auditorium, where my [T.C.] met, is arbitrary and capricious. My pullup/pushup ratio was 9/36. I personally know many people who advance to phase 2 with less. To say I'm anti-social and anti-authority in the same sentence is an oxymoron. How could staff have ever ascertained I'm "anti-authority" if I'm "anti-social"? And I did complete all homework and phasework for phase 1.
>
> C.O. Guskiewicz. Threatened me for filing grievances in mid-September. Not physically but said I would have a "target on my back". [sic]. Denied me commissary on 11-15-2013.
>
> Mr. Fischetti. Forbid me to wear prescription sunglasses after I explained my disability. Never gave me a chance to see optometry. Punished me using [T.C.] as a disguise.
>
> Scott Bomberger. Was standing right beside me when C.O. Guskiewicz made the "target on my back" statement and then laughed. Gave me a misconduct, 2 weeks cell-restriction, and kicked me out of T.C. for missing group. This is unheard of. I explained to Mr. Bomberger my [L]asik eye surgery. He said I was "making excuses". [sic]. Retaliation and violates Title 2 of the ADA.
>
> U.M. Schott. Threatened me with life in prison. Blackmailed me with a write-up. Discontinued the misconduct hearing on 11-19-2013 so he could manufacture evidence and show it to me on 11-21-2013 (ripped up bedsheet). C.O. Carter can verify this.
>
> C.O. Bengele. Told bold-face lies in a misconduct report. Probably

manufactured evidence at the behest of U.M. Schott.

Candice Lackey. Denied me commissary on 11-22-2013. Probably sent the search team to my cell on 12-13-2013. Kicked me off the block on 12-17-2013. Said she needed room for parole violaters. [sic]. [SCI] Pittsburgh has pv's and general population on every block.

Carol Scire. Took advantage of every opportunity to lie, delay, and hinder this grievance process. Returned paperwork with unknown substance on it.

Mr. Capozza. Gave me a negative recommendation to parole after I thoroughly explained everything to him. Gave his personnel the green light to persecute me after I begged him to stop.

Parole. I told this entire story to parole. They could've cared less. Gave me a one year hit when I did nothing wrong.

Damages. I told Mr. Capozza I want $70,000. I will settle with you for $50,000 if we don't go to court. Thankyou. [sic].

Mayon's Final Appeal [ECF No. 5-27]. SOIGA dismissed Mayon's final appeal as untimely on April 18, 2014, as it was due on March 18, 2014 but not received until April 2, 2014. SOIGA Final Appeal of Grievance No. 480855 [ECF No. 5-45]. Plaintiff then initiated the present action on September 5, 2014.

### III. STANDARD OF REVIEW

#### a. *Pro Se Litigants*

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106(1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax

and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### b.  Motions for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Live Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.* depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Batsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). When deciding a motion for summary judgment, in addition to the evidence presented by the parties, a court may consider facts of which it can take judicial notice. *United States v. Weber*, 396 F.2d 381, 386, n. 10 (3d Cir. 1968) ("This Circuit has taken the position that under F.R.Civ.P. 56 a court may take judicial notice of its own public records containing sworn testimony, affidavits and similar material described in F.R.Civ.P. 56(c).").

## IV.    DISCUSSION

### a. Exhaustion

"In an effort to curb the number of prisoner filings in the federal courts, Congress enacted the PLRA ["Prison Litigation Reform Act"] which, as relevant here, mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cty.*, 728 F.3d 265, 268–69 (3d Cir. 2013) (citing 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a)). The exhaustion prerequisite of the PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § ] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time[,]" and must "be determined by a judge, even if that determination requires the resolution of disputed facts." *Small*, 728 F.3d at 269-70 (citations omitted) (emphasis in original).

Failure to exhaust is an affirmative defense that must be pleaded and proven by the defendants and is not a pleading requirement for the prisoner-plaintiff. *Jones v. Bock,* 549 U.S. 199, 212, 216–17, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Additionally, the defendants must prove that the prisoner-plaintiff failed to exhaust "*each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." *Small*, 728 F.3d at 269 (citing *Jones,* 549 U.S. at 220–24).

As recently stated by the Court of Appeals for the Third Circuit, to properly exhaust administrative remedies under the PLRA, "prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) (internal quotations and citations omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Exhaustion is not satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388, 165 L.Ed.2d 368 (June 22, 2006).

Courts are not given discretion to decide whether exhaustion should be excused, *Ross v. Blake*, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016), and there is no "futility" exception to

the administrative exhaustion requirement. *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted). Under the PLRA, the exhaustion requirement centers on the "availab[ility] of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. . . . Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Ross v. Blake*, 136 S. Ct. 1850, 1858–59, 195 L. Ed. 2d 117 (2016) (quoting *Booth,* 532 U.S., at 738, 121 S.Ct. 1819).

The Pennsylvania Department of Corrections Inmate Grievance System policy DC-ADM 804 provides the procedures that inmates must follow in submitting grievances.[10] The three steps in the Pennsylvania grievance process are: (1) initial review by a Grievance Officer of an inmate grievance; (2) the appeal to the Facility Manager to review the decision of the Grievance Officer; and (3) the final review or appeal to the Secretary's Office of Inmate Grievance Appeals to review the decision of the Facility Manager. *See* DC-ADM 804 (2010); *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). The policy mandates that the inmate must include a statement of facts relevant to the claim and shall identify individuals directly involved in the event(s) in the original grievance. *See* DC-ADM 804 § 1(A)(11). Further, the policy mandates that "[a]ny grievance and/or appeal based on separate events must be presented separately[.]" *Id*. at §

---

[10] While neither plaintiff nor the defendants included the Inmate Grievance System Policy DC-ADM 804 in the record, the Court may take judicial notice that the applicable grievance procedure was the DC-ADM 804 and judicial notice that generally inmates who are in custody of the DOC receive a copy of the Inmate Handbook which contains portions of the DOC's grievance policy, DC-ADM-804. *See Wakeley v. Giroux*, No. 1:12-CV-2610, 2014 WL 1515681, at *11 (M.D. Pa. Apr. 15, 2014); *Montanez v. Beard*, 2012 WL 6917775 (M.D.Pa. Aug.10, 2012) adopted by 2013 WL 231064 (M.D.Pa. Jan.22, 2013). Therefore, Plaintiff should have received the inmate Handbook outlining the DOC's grievance procedures when he was taken into custody. Further, Further, Plaintiff does not allege that he was not provided with the DC-ADM 804 and specifically refers to it throughout his briefing. *See* Pl.'s Resp. in Op. to Mot. for Summ. J. [ECF No. 149 at 17; 19]. It is further clear that the 2010 version of the policy was in place at the time Plaintiff submitted his grievance and therefore that version controls.

1(A)(13). Further, only an issue that was included in the original grievance for initial review may be appealed, and an inmate cannot appeal a withdrawn grievance. *Id*. at §2(A)(1)(c); §2(A)(1)(g). Finally, an inmate may not appeal to SOIGA "until an inmate has complied with all procedures established for Initial Review[.]" *Id*. at § 2(B)(1)(d).

Plaintiff has failed to exhaust his administrative remedies, as his final appeal to SOIGA was untimely. Plaintiff admits that he received a response from the Facility Manager's appeal on February 25, 2014 before he was transferred to SCI Fayette on March 4, 2014. Under DC-ADM 804 § 2(B)(1)(c), he had to appeal the Facility Manager's denial within fifteen working days, or by March 18, 2014 and did not submit his appeal to SOIGA until April 2, 2014.

Plaintiff blames his delay on his transfer to SCI-Fayette and his belated receipt of the SOIGA Notice. He characterizes the SOIGA notification that his final appeal was premature and any appeal would be limited to two pages as a "new administrative remedy" available to him, such that the time limitations under DC-ADM 804 did not apply to him. This argument is rejected, as the creation of an available administrative remedy is accomplished only through the DOC grievance policy. Moreover, SOIGA's notice that his final appeal was premature was just that – a notice. It notified Plaintiff that his appeal was premature and further informed him that any appeal must be limited to two pages. At no time did SOIGA require that Plaintiff resubmit his appeal, nor did it permit him to file a delayed appeal. Further, the fact that Mayon did not receive the notice from SOIGA that his final appeal was premature until after his appeal time lapsed and after he had been transferred to SCI-Fayette from SCI-Pittsburgh does not negate the fact that he admits to having received the response from the Facility Manager denying his appeal on February 25, 2014 prior to being transferred. As such, Mayon was required to submit his final appeal to SOIGA within fifteen working days, or March 18, 2014, which he undisputedly

did not do. Moreover, any delay in submitting his appeal could only be excused if he notified SOIGA of the reason for the delay and the delay was caused by a transfer to another facility. DC-ADM 804 § 2(B)(1)(c)(1)-(2). While Plaintiff seemingly[11] submitted an Inmate Request to Staff Member on March 7, 2014 to a "Ms. Varner," indicating that he "had an appeal in your possession" and "wanted to let you know I'm in SCI Fayette," [ECF No. 5-26], this is not a notification or request to SOIGA to excuse his delay in filing his appeal due to his transfer. Mayon was required to submit his final appeal within fifteen working days, or March 18, 2014 which he did not do. Courts are not given discretion to decide whether exhaustion should be excused and exhaustion is not satisfied by filing an untimely appeal. Therefore, because the only grievance before the Court is Grievance 480885 and Plaintiff untimely filed his appeal to SOIGA as to this grievance, he has procedurally defaulted and has not exhausted his administrative remedies available to him and cannot bring the present action.

What is more, Grievance 480885 does not mention or provide any facts concerning being removed from T.C., that he was issued a false misconduct, that he was denied property from the commissary, that he was moved out of the F-Block, that he was given a negative parole recommendation or that he was transferred to SCI Fayette in retaliation for filing grievances.[12] By allowing Plaintiff to raise those claims now would subvert the purpose of the exhaustion requirement, *i.e.*, to alert a prison official to a problem and "provide them an opportunity to resolve the dispute concerning the exercise of their responsibilities before being brought into court." *Abney v. Younker*, No. 1:13-CV-01418, 2015 WL 463243, at *14 (M.D. Pa. Feb. 4, 2015)

---

[11]     The Court finds it particularly suspect that this Inmate Request was not stamped received by any SCI Pittsburgh or SCI Fayette official and has the word "copy" written on it. Nonetheless, as Plaintiff is entitled to have the facts construed in his favor for purposes of this motion, the Court will assume that he in fact submitted this Inmate Request on March 7, 2014.

[12]     Plaintiff admits that he did not exhaust his claim that he was transferred to SCI Fayette in retaliation for filing grievances. [ECF No. 149 at 19].

(granting summary judgment in favor of DOC defendants for prisoner-plaintiff's failure to exhaust were the prisoner-Plaintiff failed to include allegations in his initial grievance); *Mobley v. Snyder*, No. 1:13-CV-00772, 2015 WL 5123909, at *9 (M.D. Pa. Sept. 1, 2015) (because plaintiff failed to include a claim for monetary damages in his initial grievance as required under DC-ADM 804, he procedurally defaulted those claims); *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]"). The fact that Mayon later included these claims in his final appeal to SOIGA does not serve the purpose of the exhaustion requirement allowing prison officials to resolve the dispute without court intervention, and ignores the requirement that "[o]nly issues appealed to the Facility Manager may be appealed to Final Review." DC-ADM 804 § 2(B)(1)(b).

Accordingly, summary judgment is granted in favor of all defendants.

### b. Retaliation

Assuming *arguendo* that Plaintiff adequately exhausted his claims that he was retaliated against by Defendant Fischetti for not being able to wear tinted glasses in retaliation for filing grievances and retaliated against by C.O. Guskiewicz and C.O. Bomberger by being told he would have a "target on his back" for filing grievances, both of those claims fail on the merits.

Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. *Bistrain v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *MiT.C.hell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) quoting *Allah v. Seiverling*, 229 F.3d 220, 224-24 (3d Cir. 2000).

In order to state a *prima facie* case of retaliation under the First Amendment, a prisoner plaintiff must show:

1) The conduct in which he was engaged was constitutionally protected;
2) He suffered "adverse action" at the hands of prison officials; and
3) His constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

*Carter v. McGrady*, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). It is plaintiff's burden to establish the three elements of a *prima facie* retaliation claim.

The filing of grievances or a lawsuit satisfies the constitutionally protected conduct prong of a retaliation claim. *Rauser*, 241 F.3d at 333; *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez*, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (quoting *Allah v. Seiverling*, 229 F.3d at 225). "An adverse consequence need not be great in order to be actionable; rather it need only be more than *de minimis*." *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

To satisfy the third prong of his retaliation claim, the plaintiff must show a causal connection between his constitutionally protected activity of filing complaints and grievances and the adverse action he allegedly suffered at the hands of the defendants. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*,

480 F.3d 259, 267-68 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements. *Id.*

Following the satisfaction of the initial burden of establishing a *prima facie* case, the burden then shifts to the defendants to demonstrate that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. *Carter*, 292 F.3d at 158. At this stage, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. In other words, "the defendant[s] must establish that the same decision would have been made even absent any retaliatory motive." *Watson*, 834 F.3d at 426. A misconduct report is legitimate so long as it is issued for reasons reasonable related to a legitimate penological interest. *Id.* The Third Circuit has specifically recognized "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials who possess the necessary expertise." *Rauser*, 241 F.3d at 334. The Court of Appeals for the Third Circuit has also instructed:

> [M]ost prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence. . . we evaluate the quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them.

*Watson,* 834 F.3d at 425. The quantum of evidence burden may be satisfied by a meaningful written statement of the evidence relied upon and the reasons for the actions taken. *Williams v. Folino*, --- Fed. Appx. ---, 2016 WL 6804935 *3 (citing *Dyson v. Kocik* 689 F.2d 466, 467 (3d

Cir. 1982)).

i.   <u>Defendant Fischetti</u>[13]

Again, assuming that Plaintiff properly exhausted his administrative remedies as to Defendant Fischetti, Plaintiff has nonetheless failed to show a *prima facie* case for retaliation against Defendant Fischetti. As to the first prong, whether plaintiff was engaged in constitutionally protected conduct, the Court finds that Plaintiff has adequately demonstrated this element, as the filing of a lawsuit or grievance is protected activity under the First Amendment. *See Rouser*, 241 F.3d at 333. It is undisputed that Plaintiff filed a grievance indicating alleged wrongdoing by Defendant Fischetti.

As to the second prong, Plaintiff has failed to demonstrate adverse action. The prisoner plaintiff must demonstrate that the defendant's action was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Plaintiff has alleged that Defendant Fischetti banned him from wearing tinted glasses inside the prison. The record is undisputed that sunglasses were not allowed pursuant to the SCI-Pittsburgh Inmate Handbook Supplement. When Plaintiff was told not to wear the glasses he maintained that he had a doctor's excuse to wear them due his previous LASIK surgery. He produced a physician's letter confirming that he had LASIK surgery on his eyes; however the letter did not contain a physician's order that he wear tinted glasses. Plaintiff was given at least two opportunities to sign up for sick call to have his need to wear tinted glasses evaluated; however Plaintiff never

_____

[13]     While Plaintiff did not name Defendant Fischetti in his initial grievance in accordance with DC-ADM 804 § 1(A)(11) requiring a prisoner to "identify individuals directly involved in the event(s)," the "prison can excuse an inmate's failure to [specifically name an involved individual] by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004). Accordingly, because SCI-Pittsburgh did not dismiss Plaintiff's initial grievance for failing to name Defendant Fischetti and addressed the merits of his grievance, it is deemed to have excused Plaintiff's failure to include this defendant.

did so. The fact that Plaintiff was told not to wear sunglasses in T.C. consistent with inmate dress code is not an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Even if Plaintiff could establish the third prong, that his filing of a grievance was a substantial or motivating factor in Defendant Fischetti's decision to discipline him, Plaintiff has still failed to establish a *prima facie* case.

Even assuming that Plaintiff could adequately demonstrate a *prima facie* case for retaliation, Defendant Fischetti would still be entitled to summary judgment because the misconduct charges are supported by the by the quantum of evidence and reasonably related to a legitimate penological interest. Here, Mayon's misconduct is supported by a written statement of the evidence relied on in concluding that Mayon could not wear tinted glasses in prison without a physician's order. It is undisputed that Mayon did not sign up for sick call to be evaluated for his need to wear tinted glasses, nor did he provide a physician's order to wear tinted glasses. It is also well-documented that Mayon refused to attend T.C. activities and received an informal misconduct for refusing to obey an order. It is also undisputed that after noncompliance with Defendant Fischetti's instructions, Mayon was given a second chance to continue in the T.C. program and did continue in T.C. for a time, but ultimately Mayon voluntarily removed himself from the program.

The reasons for Defendant Fischetti's actions were well-documented and communicated to Plaintiff on several occasions. Requiring prisoners to follow the rules of a correctional institution and to attend scheduled programming is reasonable related to a legitimate penological interest. Therefore, Defendant Fischetti has satisfied his burden of presenting a "quantum of evidence" of Mayon's misconduct. *See Watson*, 834 F.3d at 426. The misconduct was legitimate and not retaliatory; thus, Defendant Fischetti is entitled to summary judgment in his favor.

<u>C.O. Guskiewicz and C.O. Bomberger</u>[14]

Plaintiff's retaliation claims against Defendants C.O. Guskiewicz and C.O. Bomberger also fails as verbal threats are not actionable under Section 1983. Plaintiff alleges that he filed grievances on August 21, 2013, August 30, 2013, September 3, 2013 and September 27, 2013.[15] Compl. [ECF No. 5] at ¶ 22. In mid-September, C.O. Guskiewicz and C.O. Bomberger questioned Plaintiff about the grievances. Plaintiff alleges that C.O. Guskiewicz stated that "plaintiff better stop filing grievances or we would have a target on his back" in retaliation for filing the grievances. *Id*. at ¶ 23, 24.

Assuming these claims are true, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983; *Hawkins v. Brooks*, 694 F.Supp. 2d 434 (W.D.Pa. 2010). *See also Lewis v. Wetzel*, 153 F.Supp 2d 678 (M.D.Pa. 2015); *Wright v. O'Hara*, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004) ("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit") (citations omitted); *MacLean v. Secor*, 876 F.Supp. 695, 698–99 (E.D.Pa.1995) ("[i]t is well-established that verbal harassment or threats . . . will not, without some reinforcing act accompanying them, state a constitutional claim"); *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation") (collecting cases); *James v. Varano*, No. 1:14-CV-01951, 2016 WL 4539195, at *13 (M.D. Pa. Aug. 31, 2016) (same). Accordingly, C.O. Guskiewicz and C.O. Bomberger are entitled to

---

[14]      Again, while Plaintiff did not name these individuals in the initial grievance, because SCI Pittsburgh did not dismiss Plaintiff's initial grievance for failing to name C.O. Guskiewicz and C.O. Bomberger and addressed the merits of his grievance, it is deemed to have excused Plaintiff's failure to include these Defendants. *See supra* FN 13.

[15]      To be clear, the sole grievance at issue for purposes of this decision is Grievance 480855. There is no evidence of record that Plaintiff appealed any other grievance in accordance with DC-ADM 804.

summary judgment in their favor, as there is no evidence that their questioning Plaintiff about his grievances and their "verbal threats" were accompanied by any reinforcing act.

## V. CONCLUSION

Based on the foregoing, Defendant Colin Fischetti's Motion for Summary Judgment [ECF No. 124] and Defendants Donald Bengele, Scott Bomberger, Mark Capozza, Nathan Guskiewicz, Candice Lackey, and Joseph Schott's Motion for Summary Judgment. [ECF No. 128] is GRANTED, as Plaintiff's failure to exhaust his administrative remedies must be treated as a procedural default. An appropriate Order follows.


DATED: February 6, 2017

BY THE COURT:


s/Cynthia Reed Eddy
United States Magistrate Judge

cc:    MICKY MAYON
       JT - 8095
       SCI Fayette
       P.O. Box 9999
       LaBelle, PA 15450-0999

       Counsel of record via CM/ECF electronic filing